# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **JESSE PORTER, et al.,** |
| **Plaintiffs,** |
| v. |
| **UNITED STATES CAPITOL POLICE BOARD,** |
| **Defendant.** |

Civil Action No. 10-992 (JEB)

## MEMORANDUM OPINION

Plaintiffs are nine officers in the Library of Congress Police who were transferred to the U.S. Capitol Police pursuant Congress's merging of the two forces.[1] Under this merger, LOC police who met certain requirements were transferred to the USCP as officers. All other LOC police, including Plaintiffs, were transferred as civilians. Plaintiffs filed this suit against the U.S. Capitol Police Board, alleging that the merger unlawfully stripped them of their police powers on account of their age. In addition, Plaintiffs contend that the Act consolidating the LOC and Capitol police forces violates their equal-protection rights because it has a disparate impact on black officers.

Defendant has now filed a Motion to Dismiss or, in the alternative, for Summary Judgment. As Plaintiffs' claims fail for both procedural and substantive reasons, the Court will grant the Motion.

---

[1] The Plaintiffs who filed suit in this case are Jesse Porter, Henry Trevathan, Vernell Morris, James Caul, Dorsey Frazier, Carlton Perry, Anthony J. Rovillard, Lawrence Crawford, and Joy A. Myers.

1

I.      **Background**

    A.  The "Merger Act"

In 2008, Congress enacted the U.S. Capitol Police and Library of Congress Police Merger Implementation Act ("Merger Act"), Pub. L. No. 110-178, 121 Stat. 2546 (2008). The Act incorporated the LOC police into the USCP in order to enhance security in and around the U.S. Capitol. Id. at §§ 2(a)(1)-(2); see also U.S. General Accounting Office, GAO-02-792R, *U.S. Capitol Police Merger Review* (2002), at 4. According to the GAO analysis, merging the LOC police with the USCP would improve security on the U.S. Capitol complex by facilitating better coordination of police activities, providing centralized intelligence, developing consistent responses to threats and emergencies, and allowing flexibility in staffing. See GAO Report at 4.

In implementing the merger, Congress had to reconcile the different retirement systems of the LOC police and the USCP. While there is no mandatory retirement age for LOC police, USCP officers must retire when they "become[] 57 years of age or complete[] 20 years of service if then over that age." 5 U.S.C. § 8335(c). The USCP Board may exempt certain officers from mandatory retirement until age 60 if "the public interest so requires." Id. USCP officers who have completed 20 years of eligible federal service by the mandatory retirement age are entitled to retirement benefits comparable to other federal law-enforcement officers. See 5 U.S.C. § 8336(m); GAO Report at 3. By contrast, LOC police receive standard federal retirement benefits. 5 U.S.C. §§ 8336(b), 8412(b); GAO Report at 3.

Congress chose to deal with the variation in the LOC police and USCP retirement policies by transferring LOC police who met certain eligibility requirements to the USCP as officers and transferring the remaining LOC police to the USCP as civilian employees. See Merger Act, §§ 2(b)(1)(A)-(B). More specifically, members of the LOC police who were set to complete 20 years of federal law-enforcement service by the age of 60 (and who met other

2

eligibility requirements) would be transferred to the USCP as officers. Id. § 2(b)(1)(A). Upon transfer, they would be subject to the USCP's mandatory retirement provisions, but would accrue law-enforcement retirement benefits, rather than the standard federal retirement benefits they had accrued as LOC police. See id. § 2(b)(3)(B); 5 U.S.C. §§ 8336(b), 8336(m), 8412(b); see also H.R. Rep. No. 110-470, pt. 1, at 2 (2007). On the other hand, members of the LOC police who would not have 20 years of service by age 60, or who would otherwise not qualify to be a USCP officer, would be transferred to the USCP as civilians. See Merger Act §§ 2(b)(1)(B). As such, they would not be subject to a mandatory retirement age and would still be eligible for USCP civilian retirement benefits. See 5 U.S.C. § 8336(b); Merger Act § 2(b)(2).

        B.  Plaintiffs' Claims

According to the Amended Complaint, which must be presumed true for purposes of this Motion, Plaintiffs were formerly members of the LOC police who were transferred to the USCP as civilians on October 11, 2009. Am. Compl., ¶ 41. Count I alleges that the U.S. Capitol Police Board unlawfully discriminated against Plaintiffs based on their age by transferring them to the USCP as civilians when younger members of the LOC police were transferred as officers. Id., ¶ 44. In light of this, Plaintiffs assert that they were "stripped of their police powers" on account of their age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633(a). Id., ¶¶ 41-42.

Plaintiffs further allege in Count II that the Merger Act is unconstitutional as applied because it discriminates against black officers. As best the Court can discern from the somewhat tangled Complaint, Plaintiffs claim that transferring LOC police, who are predominantly black, to the USCP as civilians has a racially discriminatory impact. Id., ¶¶ 50, 52-54. Because Plaintiffs' transfer as civilians allegedly denied them "the opportunity for employment, promotion, and advancement as sworn officers based on race," they contend their transfer

3

violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution by virtue of the Fifth Amendment Due Process Clause. Id., ¶ 50, 56. In addition, they allege that Defendant's support for the Merger Act has a racially discriminatory impact in violation of the Constitution. Id. at ¶ 54.

Six of the Plaintiffs in this action — Perry, Rovillard, Myers, Morris, Frazier, and Caul — previously filed lawsuits alleging that their transfer to the USCP as civilians constituted unlawful age discrimination. See Caul v. Capitol Police Bd., No. 09-1250 (D.D.C. March 4, 2010); Frazier v. Capitol Police Bd., No. 09-1251 (D.D.C. March 4, 2010); Morris v. Capitol Police Bd., No. 09-1252 (D.D.C. March 4, 2010); Myers v. Capitol Police Bd., No. 09-0666 (D.D.C. March 4, 2010); Perry v. Capitol Police Bd., No. 09-0683 (D.D.C. March 4, 2010); Rovillard v. Capitol Police Bd., No. 09-0682 (D.D.C. March 4, 2010). In Rovillard and Perry (related cases that were decided in the same opinion), another court in this District dismissed the age-discrimination claims, holding that age limits for law-enforcement officers are exempt from ADEA challenges. See Rovillard v. Capitol Police Bd., 691 F. Supp. 2d 9, 12 (D.D.C. 2010); Perry v. Capitol Police Bd., 691 F. Supp. 2d 9, 12 (D.D.C. 2010). The court also found in favor of the defendant in the other four cases, treating defendant's motions for dismissal or summary judgment as conceded when plaintiffs failed to timely file oppositions. See Mot., Exh. 1-4.

Plaintiffs filed the Complaint in this case on June 14, 2010, and an Amended Complaint on February 9, 2011. Defendant has now moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, asked for summary judgment under Rule 56.[2] Because the Court grants the former, it need not reach the latter.

---

[2] In considering Defendant's Motion to Dismiss, the Court has reviewed Plaintiffs' Amended Complaint, Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and for Summary Judgment, Plaintiff's Opposition, and Defendant's Reply.

4

**II.    Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

**III.    Analysis**

    A.    Age-Discrimination Claims

Although Plaintiffs label Count I of their Amended Complaint "Violation of the Congressional Accountability Act of 1995; Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633a(a) and Violation of Title VII of the Civil Rights Act of 1964," all that is actually alleged is an ADEA violation. Before even considering whether Plaintiffs have stated a claim

under the ADEA, the Court must first address Defendant's argument that the age-discrimination claims of most of the Plaintiffs are procedurally barred under the doctrine of *res judicata*.

1. Res Judicata

The doctrine of *res judicata*, or claim preclusion, bars parties from relitigating claims where a court has issued a final judgment on their merits in an earlier action. In order for *res judicata* to apply, there must be "(1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." Polsby v. Thompson, 201 F .Supp. 2d 45, 48 (D.D.C. 2002). Furthermore, if a claim could have been raised in an earlier action, but was not, that claim is also barred under *res judicata*. See Appalachian Power Co. v. E.P.A., 251 F.3d 1026, 1033-34 (D.C. Cir. 2001).

Six of the nine Plaintiffs in this case have previously brought precisely the same ADEA claim against the USCP Board. In those suits, they also complained of age discrimination with respect to their transfer to the USCP as civilians rather than officers. In each case, a court issued a final judgment on the merits on their age-discrimination claims. In Rovillard and Perry, the court dismissed those plaintiffs' claims on the grounds that the ADEA does not apply to the USCP's mandatory retirement age. Rovillard v. Capitol Police Bd., 691 F. Supp. 2d 9, 12 (D.D.C. 2010); Perry v. Capitol Police Bd., 691 F. Supp. 2d 9, 12 (D.D.C. 2010). In the other four cases, the court entered judgment in favor of the defendant upon finding that its motion for partial dismissal and summary judgment had been conceded. See Mot., Exh. 1-4. Granting a motion as conceded constitutes a final judgment on the merits for claim-preclusion purposes because the parties had a full and fair opportunity to litigate the claim in the prior action. See Poblete v. Indymac Bank, 657 F. Supp. 2d 86, 91 (D.D.C. 2009). As a result, those Plaintiffs' ADEA claims are barred by *res judicata* and must be dismissed. Only the claims of the remaining three – Porter, Trevathan, and Crawford – survive.

6

2. *ADEA Exemption for Law Enforcement*

In their Amended Complaint, Plaintiffs allege that the USCP's mandatory retirement scheme violates the ADEA because age is not a "bona fide occupational qualification." See id., ¶¶ 34, 47 (citing ADEA, 29 U.S.C. § 633a(4)(f)(1)). The Court need not reach this question, however, because, as Defendant correctly points out, the ADEA does not apply to the USCP's age limits. The Supreme Court has explicitly held that "mandatory age limits for law enforcement officers … are exempted from the [ADEA's] coverage." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 69 (2000) (citing 5 U.S.C. §§ 3307(d)-(e)); see also Stewart v. Smith, 673 F.2d 485, 490-94 (D.C. Cir. 1982) (holding that 5 U.S.C. § 3307(d), which allows agency heads to fix the minimum and maximum age limits for law enforcement officers, is an exception to the ADEA). Since the Capitol Police are law-enforcement officers within the definition used in 5 U.S.C. § 3307(d), see Rovillard, 691 F. Supp. 2d at 12, the age-based retirement provisions for USCP officers are exempt from the ADEA. The remaining three Plaintiffs' ADEA claim must, consequently, be dismissed for failure to state a claim.

B. Equal-Protection Claim

Plaintiffs have also alleged that the Merger Act is unconstitutional because it has a racially discriminatory impact. See Am. Compl., ¶¶ 50. In doing so, they suggest that an act violates the equal-protection component of the Fifth Amendment Due Process Clause merely because it has a disproportionate impact on a particular racial group. Courts have squarely rejected that view. Instead, a plaintiff must show purposeful discrimination to prevail on an equal-protection claim. Since Plaintiffs do not even allege intentional discrimination, their equal-protection claim must be dismissed.

1. Discriminatory Impact

In asserting that the Merger Act resulted in discriminatory treatment of black officers, Plaintiffs were presumably bringing their equal-protection claim under a "disparate impact" theory. Plaintiffs appear to have confused the standards applicable to Title VII with those applicable to equal-protection claims under the Constitution. See Washington v. Davis, 426 U.S. 229, 238-239 (1976). The Supreme Court has made clear that a showing of disparate impact alone is not sufficient to prevail on an equal-protection challenge. Id. at 239 (1976); see also 2922 Sherman Ave. Tenants' Ass'n v. District of Columbia, 444 F.3d 673, 679 (D.C. Cir. 2006) ("the Supreme Court has barred constitutional disparate impact claims") (citing Davis). Were it otherwise, any statute that did not affect all racial groups equally could be rendered unconstitutional, "'however lacking in racial motivation or however otherwise rational the treatment might be.'" Davis, 426 U.S. at 241 (quoting Jefferson v. Hackney, 406 U.S. 535, 548 (1972)).

In order to show that a race-neutral statute is unconstitutional on equal-protection grounds, a party must demonstrate that decisionmakers acted with a discriminatory purpose. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); see also U.S. v. Johnson, 40 F.3d 436, 439 (D.C. Cir. 1994). Discriminatory purpose, moreover, requires more than mere awareness of consequences. See Personnel Adm'r of Massachussets v. Feeney, 442 U.S. 256, 279 (1979). To find a statute unconstitutional on equal-protection grounds, a court must find that the legislature "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id. In this case, Plaintiffs have neither alleged that

Congress acted with a discriminatory purpose nor offered any evidence of that fact. As a result, their equal-protection cause of action must be dismissed.

2. Rational-Basis Review

Under equal-protection jurisprudence, laws that do not intentionally discriminate against a protected group are nonetheless subject to rational-basis review. Plaintiffs in this case, however, fail to even allege that the relevant statutory provisions are not rationally related to a legitimate government purpose. The Court thus agrees with Defendant that it can dispose of Plaintiffs' equal-protection claim without engaging in such review.

Even if Plaintiffs' Amended Complaint could be construed as seeking rational-basis review, the result would be no different. Rational-basis review is a very deferential standard, imposing a high burden on a plaintiff, so that the legislature may pursue legitimate government purposes by any rational means. See Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314 (1976). Under the rational-basis standard, an act survives judicial scrutiny "if there is any reasonably conceivable state of facts that could provide a rational basis" for the statutory scheme. F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).

Here, the Merger Act reflects Congress's judgment that combining the LOC police and the USCP into a single force would enhance security in and around the Capitol. See H.R. Rep. No. 110-470, pt. 1, at 2 (2007). By requiring some members of the LOC police to transfer as civilians, the Act seeks to resolve differences between the two forces' retirement systems – protecting the USCP's interest in maintaining a "young and vigorous law enforcement department," while at the same time ensuring that no LOC officer would be forced to retire without an annuity as a result of the transfer. See Mot. at 22; Merger Act § 2(d)(1). Since statutes are "accorded a strong presumption of validity" under rational-basis review, Heller, 509 U.S. at 319, and there is clearly a "reasonably conceivable state of facts" that could support this

9

legislative scheme, the Merger Act would easily survive rational-basis scrutiny. See, e.g., Murgia, 427 U.S. at 314-15 (recognizing that maintaining a young and vigorous police force is legitimate government purpose and that mandatory retirement ages are rational means of pursuing that end); Fraternal Order of Police Library of Congress Labor Committee v. Library of Congress, 692 F. Supp. 2d 9, 18-19 (D.D.C. 2010) (holding that age-discrimination challenge to Merger Act on equal-protection grounds must fail); Rovillard, 691 F. Supp. 2d at 12-14 (holding that Merger Act's application of mandatory retirement ages to former LOC police is rationally related to legitimate state interest).

**IV.     Conclusion**

The Court will therefore issue a contemporaneous Order that grants the Motion and dismisses the case.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 20, 2011